Elliott, Appellee, *v.* Marc Wilcher Realty, Inc., et al.; Western Surety Co., Appellant.

(No. 4854—Decided April 1, 1959.)

*Messrs. O'Neil & Smith,* for appellee.
*Messrs. Slabaugh, Walker, Pflueger, Roderick & Myers,* for appellant.

DOYLE, P. J. This case involves the right of a surety on the bond of a defaulting real estate broker to have vacated, during court term, a judgment entered against it, and to file an amended answer setting forth the fact that it had paid its entire liability of $5,000, under its bond, to various other persons who had been victimized by the broker.

The trial court denied a motion of the surety company to accomplish the above claimed right, and entered its judgment accordingly. The surety has appealed to this court and asserts error in the court's ruling.

It appears that on October 8, 1957, Ineva Elliott, the appellee, entered suit against Marc Wilcher Realty, Inc. (engaged in business as a licensed real estate broker), and the Western Surety Company (the statutory surety on the broker's bond in the penal sum of $5,000), in the Municipal Court of Akron, for $1,269.

The facts of the suit are shown to be substantially as follows:

The broker, acting for one Katie Clark, exhibited the Clark house and lot to the plaintiff, Elliott, who, after view, executed an offer of purchase through the broker for the sum of $12,500, and contemporaneously gave the broker $1,200 as a down payment. The broker failed to communicate the offer to the owner and, after repeated demands, refused to return the money to the prospective purchaser. Likewise, the broker refused to return $69 which had been given it to pay insurance premiums on the property when, and if, the deal was completed.

On October 16, 1957, the surety company answered the petition by pleading a general denial; on January 22, 1958, it filed an amended answer and set out two defenses—the first one in the nature of a general denial, and the second one alleging

theretofore existing claims made against its bond in excess of the penal sum marking its liability on the bond; on January 30, 1958, the case was set for trial on the issues joined in the pleadings; and on February 5, 1958, a "stipulation of facts" was filed, reciting that it contained the pertinent facts "upon which the * * * case is before this court."

On August 21, 1958, the case was decided upon the pleadings and stipulation of facts. A judgment had theretofore been entered, in the year 1957, in favor of the plaintiff, Elliott, and against Marc Wilcher Realty, Inc. (it was in default for answer or other pleading), and on said August 21, 1958, judgment was taken against the Western Surety Company on its indemnity bond in the amount of $1,269, plus interest and costs; and, in connection therewith, the court ordered that the "entry [of judgment] be filed as of the 30th day of January, 1958."

Four days after the above judgment was entered—i. e., on August 25, 1958—the surety company filed a written motion asking "for an order vacating and setting aside the judgment * * * and granting * * * a new trial"; and, contemporaneously, sought "leave to amend its amended answer * * * by adding thereto a third defense containing allegations material to this case, to wit:

" 'Further answering, and for its third defense to the petition of the plaintiff herein, this answering defendant adopts and realleges all of the allegations contained in its first and second defenses, the same as if fully written herein, and further pleading says that on or about August 15, 1957, one Michael J. Bors, Jr., filed suit against Marc Wilcher Realty, Inc., Marcus L. Wilcher, and Western Surety Company, in the Common Pleas Court of Summit County, Ohio, in case 208,958, for damages in the amount of $7,029.49, with interest from June 20, 1957, for failure during the year 1957 on the part of said defendants, Marc Wilcher Realty, Inc., and Marcus L. Wilcher, to conduct their business in accordance with the requirements of Sections 4735.01 to 4735.23 inclusive of the Revised Code of Ohio; that on July 28, 1958, a judgment was duly rendered in said case by the Court of Common Pleas of Summit County, Ohio, in favor of the plaintiff therein and against the defendant Western Surety Company, in the amount of $4,000; that on August 16, 1958,

said judgment was duly satisfied by said Western Surety Company.' ''

In developing this opinion, it is here observed that, in the stipulation of facts which supplied the evidence in the case, the litigants agreed that:

"11. On or about May 25, 1957, one Bessie Haywood filed suit in the Municipal Court of Akron, case No. 332,310, against Marc Wilcher Realty, Inc., and Marc Wilcher, for $1,000 for failure on the part of the defendants during the year 1957 to conduct their business in accordance with the requirements of Sections 4735.01 to 4735.23, inclusive, of the Revised Code of Ohio. On or about July 12, 1957, judgment was rendered in this case in favor of the plaintiff in the amount of $1,000. No appeal was taken from the judgment. It became final and was satisfied by Western Surety Company on October 22, 1957."

And that:

"13. On or about August 15, 1957, Michael J. Bors, Jr., filed suit against Marc Wilcher Realty, Inc., Marcus L. Wilcher, and Western Surety Company, in the Common Pleas Court of Summit County, Ohio, in case No. 208,958, for $7,029.49, with interest from June 20, 1957, for failure during the year 1957 on the part of the defendants, Marc Wilcher Realty, Inc., and Marcus L. Wilcher, to conduct their business in accordance with the requirements of Sections 4735.01 to 4735.23, inclusive, of the Revised Code of Ohio. Judgment in this case, in favor of the plaintiff and against defendants, Marc Wilcher Realty, Inc., and Marcus L. Wilcher, in the amount of $7,029.49, with interest from June 20, 1957, was duly rendered by the Court of Common Pleas of Summit County, Ohio, on or about September 30, 1957. No appeal was taken from said judgment, and it has become final."

It thus appears that, at the time the instant case was submitted to the court, there was in evidence the fact that judgments exceeding the $5,000 limit of the bond had been rendered against the principal debtor, the real estate broker. It further appears that, at the time of the rendition of the judgment in the instant case, the surety had paid on the judgments the sum of $5,000, the penal limit of the bond.

It is here observed that, although the Bors judgment

against the principal debtor was rendered before the instant case was submitted to the court, the judgment against the surety on the default of the real estate broker was not rendered until after the case was submitted; but it was rendered and paid before the decision in the case here under examination.

The trial court, in denying the motion to vacate its judgment against the surety and to allow an amended answer to be filed, observed in its journal entry that the Bors judgment had been paid by the surety in the amount of $4,000, but that, because the allegations of the "proposed third defense * * * would relate solely" to the satisfaction of that judgment, and that "inasmuch as the judgment in said case was rendered and satisfied subsequent to the submission of this case in this court for consideration on its merits, this court has no power to permit the amendment of the amended answer of said defendant in accordance with the provisions of R. C. [Sec.] 2309.58, and that, accordingly, such part of said motion should be overruled. The court further finds that that part of said motion of said defendant, Western Surety Company, to vacate said judgment and grant it a new trial herein is not well taken and should be overruled."

In partial summary of the facts, it appears that, when the case was submitted for decision, the court had before it proof that (1) a judgment for $1,000 in favor of one Bessie Hayward against the principal had been satisfied by payment by the surety; (2) a judgment for $680 in favor of one Johnnie Moore and against the principal stood unreversed, for which the surety (although not a party) stood obligated; (3) a judgment for $7,029.49, in favor of Michael Bors, Jr., and against the principal, had become final, for which the surety (although not shown as a party) likewise stood obligated; and (4) various other similar suits were pending in both the Municipal and Common Pleas Courts.

We first look to the claim of the appellee, Elliott, that "the liability of a surety under a bond filed pursuant to Sec. 4735.12 of the Revised Code of Ohio is $5,000 for each person damaged as the result of its principal's violation of the real estate brokers' license law." If this claim is tenable, we need go no further, as the action of the trial court could be affirmed on that basis alone.

Section 4735.12, Revised Code, requires the execution and filing of a bond in the sum of $5,000, to the state of Ohio, as a condition precedent to the issuance of a real estate broker's license. The bond is conditioned upon the faithful observance by the broker of Sections 4735.01 to 4735.23, inclusive, of the Revised Code, and "shall also indemnify any person who may be damaged by a failure on the part of the applicant for a real estate broker's license to conduct his business in accordance with the requirements of such sections" (Section 4735.12, Revised Code).

The statute continues by reciting that "any person claiming to have been damaged by any misrepresentation or fraud on the part of a real estate broker or by reason of the violation of the terms of Sections 4735.01 to 4735.23, inclusive, of the Revised Code, may maintain an action at law against the broker making such representations or perpetrating such fraud or violating such sections, and may join as parties defendant the sureties on the bonds provided for in this section."

In the bond which was executed by the principal and the surety in conformity to the statutes, there is no language indicating that the surety is liable for an amount greater than $5,000 for any or all claims against the principal. In fact, in the bond appears the following specific language: "It is expressly understood and agreed that the said liability of the surety for any and all claims hereunder shall in no event exceed the sum of five thousand dollars ($5,000)."

It is argued by the appellee that the language of the statute (Section 4735.12, Revised Code) requiring that "the bond * * * shall also indemnify any person who may be damaged" does not limit the liability of a surety to an aggregate of $5,000, but, on the contrary, limits it only to $5,000 for each individual claim.

It is well settled that the liability of a surety on a statutory bond is measured by the terms of the statute; that the statute forms a controlling part of every such agreement. *Cusack* v. *McGrain*, 136 Ohio St., 27, 23 N. E. (2d), 633; *Southern Surety Co.* v. *Chambers*, 115 Ohio St., 434, 154 N. E., 786.

Generally, it is held that the liability of a surety is limited to the penal sum stated in the bond, and that such liability of a

surety on a statutory bond "cannot be enlarged by implication beyond its terms and its statutory office." 11 Corpus Juris Secundum, Bonds, Section 57. The weight of authority sustains the rule that, when several persons have claims against a statutory bond, the aggregate recovery, although the aggregate of the judgments may exceed the penalty of the bond, is generally limited to the amount of the penalty.

In construing the meaning of the phrase "any person who may be damaged," as it appears in context with other language of the said statute, we are of the opinion, and so hold, that the adjective "any" is meant to mean "a single person," as distinguished from "each and every" or "all" persons. See definitions and footnotes in 3 Corpus Juris Secundum, 1398 *et seq.*, Any; Webster's New International Dictionary (2 Ed.). When this meaning of the word "any" is adopted, the statute then clearly means that the surety may be liable to indemnify any one person up to $5,000, or several persons the aggregate of whose claims amount to $5,000, but that the aggregate liability of the surety shall not exceed $5,000 for any one or all claims. See compilation of authorities in *Brown* v. *National Surety Corp. of New York*, 207 S. C., 462, 36 S. E. (2d), 588.

We now turn to another question presented and argued. It is stated by the appellee as follows: "Assuming the aggregate liability of the surety under a bond filed pursuant to Section 4735.12 of the Revised Code of Ohio to be $5,000, is the payment by the surety of a judgment against the principal for defaults of the principal, a defense to a subsequent action against both the principal and surety for defaults of the principal which occurred during the same period covered by the bond, where such prior judgment resulted from an action to which the surety was not a party?"

The statute (Section 4735.12, Revised Code) does not require suit against a surety, although a claimant "may maintain an action at law against the broker making such representations or perpetrating such fraud or violating such sections, and may join as parties defendant the sureties on the bonds provided for in this section." The uncontroverted fact that a judgment has been entered in favor of a creditor and against the principal debtor proves, prima facie, that the creditor has a claim

against the surety for the amount of the judgment within the limits of the bond. As stated before, the bond indemnifies a person who may be damaged by a broker's delict; not necessarily only a person who has secured a judgment in court against the surety.

In view of the fact that the evidence before the court at the commencement of the trial showed without contradiction that judgments in excess of the limit of the bond had been rendered against the principal debtor (the broker), for which the surety was prima facie liable, and remained unsatisfied by the surety, and in view of the further fact that, before the court entered its judgment against the principal and the surety, the surety had paid up to the limit of its bond on two of the judgments for which it was prima facie liable, we are of the opinion, and so hold, that the court erred in denying the motion here under inspection.

The rules of "interpleader" are not before us in this case. Neither are there statutes or case law in this state which place upon a surety the responsibility of prorating its liability.

It is our thought that the law should not permit this judgment to stand, thereby requiring further litigation by the surety to protect its right to a limitation of $5,000 under its bond.

The order of the Municipal Court will be reversed and the cause remanded, with directions to sustain the motion.

*Judgment reversed and cause remanded.*

STEVENS and HUNSICKER, JJ., concur.